**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:
Dwendolyn M. Creecy,

    Debtor.

\*   \*   \*   \*   \*   \*   \*

U.S. Bank Trust National Association, as
Trustee of the Bungalow Series IV Trust,

     Movant,
   vs.

Dwendolyn M. Creecy,
    Respondent.

CASE NO. 25-10220-BLS
CHAPTER 13

**Objections due by: JUNE 17, 2025**
**Hearing Date: JUNE 24, 2025 AT 10AM**

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE WITH RESPECT TO REAL PROPERTY LOCATED AT 181 MADISON DRIVE, NEWARK, DELAWARE 19711</u>

   U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust (hereinafter "Movant"), by its undersigned counsel, respectfully moves this Honorable Court, pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001 and Fed. R. Bankr. P. 9014, to terminate the Automatic Stay to allow Movant, and any subsequent holders of the loan and/or mortgage documents evidencing Movant's claim and security interest in certain real property in which Dwendolyn M. Creecy (hereinafter "Debtor") claim an interest, to exercise its rights and remedies as a secured creditor of the Debtor with respect to a parcel of real property located at 181 Madison Drive, Newark, Delaware 19711 (the "Property").  In support thereof, Movant states the following:

   1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This motion is a contested matter under Fed. R. Bankr. P. 4001 and 9014.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1409(a). The statutory basis for the relief requested in this motion is 11 U.S.C. §§ 105 and 362.

2.      On February 10, 2025, the Debtor filed a voluntary petition for relief under Chapter 13 of the United State Bankruptcy Code.  William F. Jaworski, Jr., is appointed Chapter 13 Trustee.

3.      On or about November 23, 2009, Dwendolyn M. Creecy executed and delivered to Wilmington Mortgage Services, Inc, a promissory note (hereinafter the "Note") in the amount of $112,818.00, plus interest at the rate of 5.290% per annum, attorney's fees, costs and late charges to be paid over thirty (30) years.  Pursuant to the Note, the required initial monthly principal and interest payments of $625.78.  A true and correct copy of the Note is attached hereto and incorporated herein as Exhibit "A."

4.      To secure the repayment of the sums due under the Note, Dwendolyn M. Creecy executed and delivered to Mortgage Electronic Registration Systems, Inc. as nominee for Wilmington Mortgage Services, Inc, a mortgage on the Property dated November 23, 2009 (hereinafter the "Mortgage"), encumbering the real property and improvements thereon known as 181 Madison Drive, Newark, Delaware 19711.  The Mortgage was duly recorded in New Castle County, State of Delaware on November 25, 2009, in Instrument No. 20091125-0075125.  A true and correct copy of the Mortgage is attached hereto and incorporated herein as Exhibit "B."

5.      The Note and Mortgage were later transferred to U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust.   True and correct copies of the Assignments of Mortgage are attached hereto and incorporated herein as Exhibit "C."

6.      On January 9, 2017, Dwendolyn M. Creecy entered into a Loan Modification Agreement with Bayview Loan Servicing, LLC. The New Unpaid principal balance was $127,315.27 with an initial Interest rate of 3.243% for years 1-5 (P&I $476.71) and 4.200% for year 6-40 (P&I $543.30).  The monthly payments are subject to change as the escrow portion adjusts annually. The new Maturity Date is July 1, 2056.

7.      On December 21, 2018, Debtor and Wilmington Savings Fund Society, FSB D/B/A Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust V entered into another Loan Modification Agreement. The Unpaid Principal Balance of the Note increased to $132,959.86 with an interest thereon at a rate of 6.50% fixed per annum. The Principal and Interest amount is $778.42, plus monthly escrow impound for property taxes (The escrow portion of the loan payment fluctuates due to changes in tax assessments and/or increase in insurance premiums due).  The new maturity date is December 1, 2058. On March 27, 2019, Debtor and Wilmington Savings Fund Society, FSB D/B/A Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust V entered into another Loan Modification Agreement. The new Unpaid Principal Balance of the Note increased to $139,539.95 with an interest rate of 6.50% fixed. The new maturity date was reset to March 1, 2059.  True and correct copies of the Loan Modification Agreements are attached hereto and incorporated herein as part of Exhibit "D".

8.      The Debtor defaulted under the terms of the Note and Mortgage by failing to make payments when due and owing beginning with the post-petition payment due March 1, 2025.

9.      Debtor indicates in her proposed Chapter 13 Plan, that the Debtor would maintain regular payments to Movant outside the Plan.

10.     The following post-petition payments are past due:

3   payments from 03/01/2025 to 05/01/2025 @ $816.95   $2,450.85
**TOTAL MISSED PAYMENTS:**                      **$2,450.85**

11.     The total post-petition arrears owed on the loan as of May 1, 2025 is as follows:

3   payments from 03/01/2025 to 05/01/2025 @ $816.95   $2,450.85
Attorney's fees and costs                       $ 699.00
Suspense balance                               ( $    0.00)
**TOTAL POST-PETITION ARREARAGE**=              **$3,149.85**

12.    The following amounts are due and owing under the Note and Mortgage good through June 1, 2025:

| | |
|---|---|
| Unpaid Principal | $135,859.06 |
| Interest good through 06/01/2025 | $ 13,982.10 |
| Late Charges | $    196.08 |
| Attorney's Fees and Cost | $    699.00 |
| Attorney Fees | $  1,125.00 |
| Foreclosure Expenses | $    843.00 |
| Forbearance Interest | $  2,240.70 |
| Property Taxes Delinquent | $  7,995.03 |
| Suspense Balance | ($0.00) |
| Escrow Advance | $  2,112.20 |
| **TOTAL THROUGH JUNE 1, 2025** | **$165,052.17** |

13.    The per diem interest is $24.19.

14.    According to Debtor's Schedule A, Movant's good faith estimate of the value of the collateral is $180,000.00.

15.    Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant:

| Lien Holder | Type of Lien | Amount of Lien |
|:---:|:---:|:---:|
| Movant | First Mortgage | $164,353.17 good through 6/1/25 |
| DSH | Second Mortgage | $17,682.32- Per Debtor's Schedule |
| DSH | Third Mortgage | $5,084.73- Per Debtor's Schedule |
| **TOTAL** | | **$187,120.22** |

16.    Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization

17.    The Debtor has not and cannot offer Movant adequate protection of its interest in the Property, and Movant avers that it is not adequately protected.

18.    Movant believes that this motion will be unopposed or entered upon consensual terms.  A stay of any order granting this motion would, in such instance, be inappropriate. Therefore, Movant is seeking relief from the stay provisions of Fed. R. Bankr. P. 4001(a)(4).

19.    Movant also requests that the court order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the Property including, but not limited to, notices required by state law and communications to offer and provide information with regard potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements, be sent directly to the Debtor.

WHEREFORE, Movant respectfully requests that this Court enter an Order terminating the automatic stay and allowing Movant to exercise its non-bankruptcy rights and remedies as to the Property, including, but not limited to, foreclosure of the Mortgage, and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  May 27, 2025

/s/ Christina J. Pross
Christina J. Pross, Esq. (#5376)
Marinosci Law Group, P.C.
200 Continental Drive, Ste. 209
Newark, DE 19713
Tel: 302-691-9981/ Fax: 302-426-5037
cpross@mlg-defaultlaw.com
bkinquiries@mlg-defaultlaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Dwendolyn M. Creecy,

      Debtor.

\*   \*   \*   \*   \*   \*   \*

U.S. Bank Trust National Association, as
Trustee of the Bungalow Series IV Trust,

           Movant,

     vs.

Dwendolyn M. Creecy,
         Respondent.

CASE NO. 25-10220-BLS
CHAPTER 13

**Objections due by: JUNE 17, 2025**
**Hearing Date: JUNE 24, 2025 AT 10AM**

## CERTIFICATE OF SERVICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

      I, Christina J. Pross, hereby certify that on May 27, 2025, a true and correct copies of the foregoing Motion for Relief from Automatic Stay under Section 362 of the Bankruptcy Code, Notice of Motion and proposed Order were served upon the parties listed below in the manner stated:

<u>Via U.S. First Class Mail:</u>
Dwendolyn M. Creecy
181 Madison Dr
Newark, DE 19711-4405
*Debtor*

<u>Via ECF:</u>
Steven J. Stirparo, Esq.
Law Office of Steven J. Stirparo
3622 Silverside Road
Wilmington, DE 19810
*Counsel for Debtor*

<u>Via ECF:</u>
William Jaworski - Chapter 13 Trustee
824 Market Street
P.O. Box 1351
Wilmington, DE 19899-1351
*Chapter 13 Trustee*

<u>Via ECF:</u>
U.S. Trustee
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

Dated:  May 27, 2025

*/s/ Christina J. Pross*
 Christina J. Pross
 Movant's Attorney

EXHIBIT A

# NOTE

FHA Case No.

NOVEMBER 23, 2009             WILMINGTON                    DELAWARE
    [Date]                        [City]                       [State]

181 MADISON DRIVE, NEWARK, DELAWARE 19711
[Property Address]

### 1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means  WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE
CORPORATION                                                and its successors and assigns.

### 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED TWELVE THOUSAND EIGHT HUNDRED EIGHTEEN AND 00/100
                                     **Dollars (U.S. $ 112,818.00** )
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of  FIVE AND 290/1000                         percent
(     5.290  %) per year until the full amount of principal has been paid.

### 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st  day of each month beginning
on  JANUARY 1, 2010                . Any principal and interest remaining on the  1st    day of
DECEMBER, 2039             , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at  2383 LIMESTONE ROAD, WILMINGTON, DELAWARE
19808
                                                              , or at such other place
as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 625.78        .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

Borrower Initials:

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

**5.   BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.   BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                percent (      4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

Borrower Initials: _____   _____   _____   _____   _____   _____

this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
DWENDOLYN M CREECY          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower

**PAY TO THE ORDER OF**
Secretary of Housing and Urban Development of
Washington D.C., and his/her successors and assigns
**WITHOUT RECOURSE**
**BANK OF AMERICA, N.A.**

BY _____
   MICHELE SJOLANDER
   SENIOR VICE PRESIDENT

PAY TO THE ORDER OF:    Bank of America, NA
WITHOUT RECOURSE

WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE CORPORATION

BY: _____
    LESLIE MAKREY
ITS: VICE PRESIDENT OF OPERATIONS

*[Sign Original Only]*

## ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER:  DWENDOLYN M CREECY

NOTE DATE:  11/23/2009

ORIGINAL PRINCIPAL BALANCE:  $112,818.00

PAY TO THE ORDER OF:  BAYVIEW ACQUISITIONS LLC

WITHOUT RECOURSE

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

By Bayview Loan Servicing, LLC, its Attorney in Fact

BY:_____

NAME: DAVID BRIGGS
TITLE: FIRST VICE PRESIDENT

PAY TO THE ORDER OF:

WITHOUT RECOURSE

BAYVIEW ACQUISITIONS LLC

BY:_____

NAME: DAVID BRIGGS
TITLE: FIRST VICE PRESIDENT

EXHIBIT B

This Instrument Prepared By:

Pages: 11    F: $193.00
11/25/09 04:14:56 PM
Michael E. Kozikowski    MTG
New Castle Recorder

After Recording Return To:
WILMINGTON MORTGAGE SERVICES, INC.
2383 LIMESTONE ROAD
WILMINGTON, DELAWARE 19808
Loan Number:

Parcel ID No.:

————— [Space Above This Line For Recording Data]—————————

# MORTGAGE

FHA CASE NO.

**MIN:**

THIS MORTGAGE ("Security Instrument") is given on  NOVEMBER 23, 2009          .
The mortgagor is   DWENDOLYN M CREECY

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as
Mortgagee. **MERS is the nominee for Lender,** as hereinafter defined, and Lender's successors and
assigns.  MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE CORPORATION
("Lender")
is organized and existing under the laws of   DELAWARE                                ,
and has an address of   2383 LIMESTONE ROAD, WILMINGTON, DELAWARE 19808

Borrower owes Lender the principal sum of   ONE HUNDRED TWELVE THOUSAND EIGHT
HUNDRED EIGHTEEN AND 00/100                Dollars (U.S. $ 112,818.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
DECEMBER 1, 2039                  . This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph
7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note.  For this purpose, Borrower does
hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS the following described property located in
NEW CASTLE                            County, Delaware:

Borrower Initials:

11

De
Or

SEE PRELIMINARY TITLE
A.P.N.: ████████████

which has the address of  181 MADISON DRIVE

[Street]

NEWARK          , Delaware     19711          ("Property Address");

[City]                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Borrower Initials: _____  _____  _____  _____  _____

File No:
Parcel No: ████████
Property: 181 Madison Drive
          Newark, DE 19711

# LEGAL DESCRIPTION

ALL that certain lot, piece or parcel of land, with the buildings thereon erected, situate in the City of Newark, New Castle County and State of Delaware, known as 181 Madison Drive, being Lot No. 352, on the Plan of Casselberry Homes In, as the Plan thereof is of record in the Office of the Recorder of Deeds, in and for New Castle County, Delaware, in Microfilm No. 141, and being more particularly bounded and described in accordance to a recent Mortgage Inspection Plan prepared by East Coast Survey, Professional Land Surveyors, dated October 29, 2009, as follows, to-wit:

BEGINNING at point on the Northwesterly side of Madison Drive, formerly McKinley Drive, at 60.00 feet wide, as shown on the Plot of the property of Cassleberry Homes, Inc. (sheet 3), said point being measured by the following three (3) courses and distances from the Northeasterly end of a junction curve having a radius of twenty (20) feet forming the intersection of the Northeasterly side of Madison Drive with the Northerly side of its outlet, at fifty (50) feet wide, as shown on the aforesaid plot (sheet 3); (1) Northwesterly on a curve to the left forming the intersection of the Northeasterly side of Madison Drive with the Northwesterly side of McKinley Drive, at sixty (60) feet wide having a radius of 307.21 feet an arc distance of 435.75 feet to a point of tangency; (2) thence South 75 degrees 56 minutes 00 seconds West, 324.76 feet to a point; (3) Southwesterly on a curve to the left having a radius of 277.15 feet, an arc distance of 104.37 feet to the point and place of Beginning, said point of Beginning being in the division line between Lot Nos. 352 and 353; thence continuing along said curve and said side of Madison Drive in a Southwesterly direction 16.03 feet to a point in the division line between Lot Nos. 351 and 352; thence thereby North 40 degrees 00 minutes 00 seconds West, and passing through the party wall between the house on this lot and the lot adjoining on the Southwest, 100.05 feet in the Northwesterly side of a 12.00 foot wide common driveway, said Northwesterly side of said driveway forming the Northwesterly side of said driveway forming the Northwesterly boundary of the within described lot; thence North 50 degrees 00 minutes 00 seconds East along the said side of said driveway, 16.00 feet to a point in the first mentioned division line; and thence thereby South 40 degrees 00 minutes 00 seconds East, and passing through the party wall between the house on this lot and that on the lot adjoining on the Northeast, 100.66 feet to the point and place of Beginning. Be the contents thereof what they may.

TOGETHER with the free and uninterrupted right, use and privilege of the above-mentioned twelve (12) foot wide driveway in common with others entitled thereto forever.

SUBJECT, HOWEVER, to the use of others entitled thereto of that portion of said driveway included in the above-described piece or parcel of land, and to the payments of a proportionate undivided share of the cost and expense of maintaining the same.

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Borrower Initials: 

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.   Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property,  or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.  These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or

Borrower  Initials: _____  _____  _____  _____  _____  _____  ____

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.    Fees.**  Lender may collect fees and charges authorized by the Secretary.

**9.    Grounds for Acceleration of Debt.**

    **(a)    Default.**  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b)    Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c)    No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d)    Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e)    Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS                            from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                            from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument

Borrower Initials: _____  _____  _____  _____  _____

FHA DELAWARE MORTGAGE - MERS
DEMTGZ.FHA  11/01/08                    Page 5 of 10                    DocMagic eForms 800-649-1362
www.docmagic.com

De
Or

and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any other accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other

Borrower Initials: _____  _____  _____  _____  _____

FHA DELAWARE MORTGAGE - MERS
DEMTGZ.FHA  11/01/08                          Page 6 of 10                    *DocMagic eForms* 800-649-1362
www.docmagic.com

Des
Ord

remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower:  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.  If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees of        5.000  % of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Satisfaction.**  Upon payment of all sums secured by this Security Instrument, this Security Instrument shall cease and become void and of no effect and Lender shall cause the entry of satisfaction to be made upon the records of this Security Instrument.  Borrower shall pay all costs and fees for entering the satisfaction upon the records of this Security Instrument.

**20. Future Advances.**  This Security Instrument secures a maximum amount of up to 150% of the amount of the Note.  This Security Instrument shall secure any additional loans as well as any and all

Borrower Initials: _____  _____  _____  _____  _____  _____

FHA DELAWARE MORTGAGE - MERS
DEMTGZ.FHA  11/01/08                              Page 7 of 10                    *DocMagic* *eForms* 800-649-1362
                                                                                              www.docmagic.com

present or future advances and readvances under the Note made by Lender to or for the benefit of Borrower or the Property, all of which shall be entitled to the benefits of this Security Instrument under 25 Del. Code §2118 and shall have the same lien priority as if the future loans, advances or readvances were made as of the date hereof including, without limitation:  (a) principal, interest, late charges, fees and other amounts due under the Note or this Security Instrument; (b) all advances by Lender to Borrower or any other person to pay costs of erection, construction, alteration, repair, restoration, maintenance and completion of any improvements on the Property; (c) all advances made or costs incurred by Borrower for the payment of real estate taxes, assessments or other governmental charges, maintenance charges, insurance premiums, appraisal charges, environmental inspection, audit, testing or compliance costs, and costs incurred by Lender for the enforcement and protection of the Property or the lien of this Security Instrument; and (d) all legal fees, costs and other expenses incurred by Lender by reason of any default or otherwise in connection with the Note.  Borrower agrees that if, at any time during the term of this Security Instrument or following a foreclosure hereof, Borrower fails to perform or observe any covenant or obligation under this Security Instrument including, without limitation, payment of any of the foregoing, Lender may (but shall not be obligated to) take such steps as are reasonably necessary to remedy any such nonperformance or nonobservance and provide payment thereof.  All amounts advanced by Lender shall be added to the amount secured by this Security Instrument and shall be due and payable promptly after demand, together with interest at the rate of interest in effect under the Note, such interest to be calculated from the date of such advance to the date of repayment thereof.  Borrower's obligations hereunder shall  be continuing and shall survive notwithstanding a foreclosure of this Security Instrument.

   **21. Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this  Security Instrument as if the rider(s) were a part of this Security Instrument.

   [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

FHA DELAWARE MORTGAGE - MERS
DEMTGZ.FHA  11/01/08                              Page 8 of 10                              DocMagic *eForms* 800-649-1362
                                                                                                         *www.docmagic.com*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DWENDOLYN M CREECY              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower

Signed, sealed and delivered in the presence of:

_____                 _____

FHA DELAWARE MORTGAGE - MERS
DEMTGZ.FHA  11/01/08                   Page 9 of 10                   DocMagic eForms 800-649-1362
                                                                     www.docmagic.com

——————————— [Space Below This Line For Acknowledgment] ———————————

State of ___DELAWARE___

County of ___NEW CASTLE___

    This instrument was acknowledged before me on ___November 23, 2009___

by ___DWENDOLYN M CREECY___

_____

_____ .

_____
Signature of Notarial Officer

_____
Title and Rank

My commission expires: _____

(Seal)

NANCY WALSH LAW
ATTORNEY AT LAW
STATE OF DELAWARE
29 DEL C. SEC. 4323 (a) (3)

De
Or

EXHIBIT C



Pages: 2    F: $53.00
07/05/11 12:33:30 PM
T20110020484
Michael E. Kozikowski  ASG
New Castle Recorder

This space for Recorder's use

DocID#

Tax ID:

Property Address:
**181 Madison Dr
Newark, DE 19711-4405**

11

Recording Requested By:
**Bank of America**
Prepared By:
**Youda Crain**

**450 E. Boundary St.
Chapin, SC 29036**

When recorded mail to:
**CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036**

MIN #:                              MERS Phone #:

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME    LOANS SERVICING, LP** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:          **WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE CORPORATION**

Borrower(s):          **DWENDOLYN M CREECY**

Date of Mortgage: **11/23/2009**          Original Loan Amount: **$112,818.00**

Recorded in **New Castle County, DE** on: **11/25/2009**, book **N/A**, page **N/A** and instrument number **20091125-0075125**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
__6.23.11__

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

**Malik Basurto, Assistant Secretary**

2

# CALIFORNIA
## ALL PURPOSE CERTIFICATE OF ACKNOWLEDGEMENT

State of California

County of _VENTURA_ } SS.

On _JUNE 23, 2011_ before me, _Lillian J. Ellison, NOTARY PUBLIC_
(insert name and title of the officer)

personally appeared _MALIK BASURTO_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LILLIAN J. ELLISON
Commission # 1925617
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2015

_____
(signature of notary public)

(seal)

ATTATCHED: ASSIGNMENT OF MORTGAGE

BORROWER(s): Dwendolyn M. Creecy

N

Des
Orc



Prepared by & Return to:
Atlantic Law Group, LLC
Attn: Assignments/Pre-sale
1602 Village Market Blvd SE, Suite 310
Leesburg, VA 20175
Matter: 547428
Bank of America

03/11/14 01·49:34 PM

Michael E. Kozikowski
New Castle Recorder  ASG

## CERTIFICATE OF TRANSFER/ASSIGNMENT

Recorded in the Public Records of **New Castle County**, Delaware.

| | | | |
|---|---|---|---|
| Date of Instrument: | 11/23/2009 | Recorded: | 11/25/2009 |
| Instrument number: | 20091125-0075125 | Book/Page: | NA |
| Amount Secured: | One hundred twelve thousand eight hundred eighteen and 00/100 ($112,818.00) | | |

Grantor(s)/Mortgagor(s):  **Dwendolyn M. Creecy**

| | |
|---|---|
| **Assignor:** | **BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP** |

hereby grants, assigns, and transfers all of its right, title and interest in the Deed of Trust/Mortgage described above to

| | |
|---|---|
| **Assignee:** | **Bayview Loan Servicing, LLC** |
| Property Address: | 181 Madison Drive, Newark, DE 19711 |
| Tax ID: | |

Bank of America N.A. S|B|M +o

BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP

By:   Name: _Regina Rhodes_ 3-4-14
      Regina Lendie Rhodes
      Title: Assistant Vice President (AVP)

State of _Texas_

County of _Dallas_

I hereby certify that on this _4th_ day of _March_, 2014, before me, the subscriber, a Notary Public for the State of _Texas_ and County of _Dallas_ aforesaid, personally appeared _Regina Lendie Rhodes_ who acknowledged himself/herself to be the _AVP_ of _Bank of America_. He/She is personally known to me or presented proof of identification.

Notary Public  Jennifer Christine Lacy

My commission expires: May 7, 2016

JENNIFER CHRISTINE LACY
Notary Public
STATE OF TEXAS
My Comm. Exp. May 07, 2016

| | |
|---|---|
| Electronic Recording | |
| Instr: 201803280014288 | 03/28/2018 |
| Pages: 1    Fees: $48.00 | 01:12:04PM |
| Michael E. Kozikowski | - - - - - - - - - - - |
| New Castle County Recorder | ASG |

Parcel No.: ███

**Prepared by:**
ESLOAN SOTOLONGO
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
KIMBERLING CITY, MO. 65686

**When Recorded Mail To:**
WILMINGTON SAVINGS FUND SOCIETY, FSB
3020 OLD RANCH PARKWAY
#180
SEAL BEACH, CA, 90740

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #:            / TS Ref #:            / Client Ref #:            DE/NEW CASTLE

Assignment Prepared on: January 11, 2018

**ASSIGNOR: BAYVIEW LOAN SERVICING, LLC,** at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE: BAYVIEW DISPOSITIONS IIIA, LLC,** at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 11/23/2009, in the amount of $112,818.00, executed by DWENDOLYN M CREECY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WILMINGTON MORTGAGE SERVICES, INC,. A DELAWARE CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 11/25/2009, Instrument #: 20091125-0075125 in NEW CASTLE County, State of Delaware.

Property Address: 181 MADISON DRIVE, NEWARK, DE, 19711
Parcel No.: ███

Document References:
- Assignment Dated: 3/26/2014 from SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY BAYVIEW LOAN SERVICING, LLC ITS ATTORNEY IN FACT to BAYVIEW LOAN SERVICING, LLC Recorded: 6/18/2014, Instrument #: 201406180025451

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW LOAN SERVICING, LLC

On:    JAN 1 6 2018

Signature: _____
Name:    ESLOAN SOTOLONGO
Title:    ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On    JAN 1 6 2018    , before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____

Rogelio A. Portal
Notary Expires: 8/25/2020 / #: ███

ROGELIO A. PORTAL
MY COMMISSION ███
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

DE/NEW CASTLE

```
Electronic Recording
Instr: 20180328001289              03/28/2018
Pages: 1        Fees: $48.00       01:12:32PM
Michael E. Kozikowski              T20180010637
New Castle County Recorder         ASG
```

Parcel No.: ▮▮▮▮▮▮

**Prepared by:**
ESLOAN SOTOLONGO
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
KIMBERLING CITY, MO, 65686

**When Recorded Mail To:**
WILMINGTON SAVINGS FUND SOCIETY, FSB
3020 OLD RANCH PARKWAY
#180
SEAL BEACH, CA, 90740

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #:        / TS Ref #:            ' Client Ref #:        / DE/NEW CASTLE

Assignment Prepared on: January 11, 2018

**ASSIGNOR:** BAYVIEW DISPOSITIONS IIIA, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE:** WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V , at PO BOX 2741, SEAL BEACH, CA, 90740

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 11/23/2009, in the amount of $112,818.00, executed by DWENDOLYN M CREECY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 11/25/2009, Instrument #: 20091125-0075125 in NEW CASTLE County, State of Delaware.

Property Address: 181 MADISON DRIVE, NEWARK, DE, 19711
Parcel No.: ▮▮▮▮▮▮

Document References:
- Assignment Dated: JAN 1 6 2018 from BAYVIEW LOAN SERVICING, LLC to BAYVIEW DISPOSITIONS IIIA, LLC To Be Recorded Concurrently.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW DISPOSITIONS IIIA, LLC

On: JAN 1 6 2018

Signature: _____
Name:     ESLOAN SOTOLONGO
Title:    ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE
On JAN 1 6 2018 , before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IIIA, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A. Portal
Notary Expires: 8/25/2020 / # ▮▮▮▮▮▮

ROGELIO A. PORTAL
MY COMMISSION ▮▮▮▮▮▮
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

DE/NEW CASTLE

**20210222-0021377**
P: 1 of 3    F:$74.00
                          2/22/2021 1:21:19 PM
Michael E. Kozikowski        T20210011724
New Castle Recorder                    ASG

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V**, whose address is **3020 OLD RANCH PARKWAY SUITE 180, SEAL BEACH, CA 90740**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF LODGE SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 11/23/2009
Original Loan Amount: $112,818.00
Executed by (Borrower(s)): **DWENDOLYN M CREECY**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE CORPROATIOM, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Mortgage Book/Liber/Volume N/A, Page N/A
Document/Instrument No: 20091125-0075125 in the Recording District of New Castle, DE, Recorded on 11/25/2009.

Property more commonly described as: 181 **MADISON DRIVE, NEWARK, DELAWARE 19711**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **JAN 2 5 2021** _____

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V, BY AMERICAN MORTGAGE INVESTMENT PARTNERS MANAGEMENT, LLC, ITS ATTORNEY-IN-FACT**

By: DENA R NOBLE
Title: **VP, COLLATERAL MANAGEMENT**

Witness Name:    **A. Fuentes**
POA BATCH #11267
POA WAS RECORDED IN NEW CASTLE  COUNTY, DE
ON 10/10/2019  /INST: 20191010-0081595

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          _____
County of      _____

On _____, before me, _____, a Notary Public, personally appeared DENA R NOBLE, VP, COLLATERAL MANAGEMENT of/for AMERICAN MORTGAGE INVESTMENT PARTNERS MANAGEMENT, LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. I further certify DENA R NOBLE, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): _____
My Commission expires: _____

---

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

---

State of **CALIFORNIA**
County of **ORANGE**

On **January 25, 2021**, before me, **VALYA FISHER**, the undersigned Notary Public, personally appeared **DENA R NOBLE**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **CALIFORNIA** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VALYA FISHER
Notary Public - California
Orange County
Commission
My Comm. Expires Mar 29, 2023

**NOTARY PUBLIC**
Printed Name: **VALYA FISHER**
My Commission Expires: **March 29, 2023**

**20210329-0036894**
P: 1 of 2   F:$61.00
                    3/29/2021 2:10:53 PM
Michael E. Kozikowski      T20210020628
New Castle Recorder             ASG

Prepared By and Return To:
**Maged Farag**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

_____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **11/23/2009**
Original Loan Amount: **$112,818.00**
Executed by (Borrower(s)): **DWENDOLYN M CREECY**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR WILMINGTON MORTGAGE SERVICES, INC., A DELAWARE CORPROATIOM, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Mortgage Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **20091125-0075125** in the Recording District of **New Castle, DE**, Recorded on **11/25/2009**.

Property more commonly described as: **181 MADISON DRIVE, NEWARK, DELAWARE 19711**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  **3/12/2021**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

BY: **MURAT DENIZ**
Title: **VICE PRESIDENT**

Witness Name: **MAGED FARAG**

POA BATCH #11964
POA WAS RECORDED IN  NEW CASTLE COUNTY, DE
ON 11/30/2020 /INST: 202011300107353

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of    **PINELLAS**

On **3/12/2021**, before me, **JEFF G. JORDAN**, a Notary Public, personally appeared **MURAT DENIZ, VICE
PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK
TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES IV TRUST,** personally
known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the
laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing
instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that
MURAT DENIZ, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **JEFF G. JORDAN**
My commission expires: **02/26/2024**

Jeff G. Jordan
NOTARY PUBLIC
STATE OF FLORIDA
Comm#
Expires 2/26/2024

EXHIBIT D

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd , 5th Floor
Coral Gables, FL 33146

_____ [Space Above This Line For Recording Data] _____

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of January 09, 2017 (the Effective Date ), by and between, Bayview Loan Servicing, LLC, ("Servicer") and DWENDOLYN M CREECY ("Borrower").

### RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 11/23/2009, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $112,818.00 .

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 11/23/2009, in the original principal sum of $112,818.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer.  Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

### AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

I.  NOTE MODIFICATIONS:
    (a)  Outstanding Debt:
    Borrower agrees that the unpaid principal balance due on the Note of $133,670,20 , shall be decreased by $6,390.99 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $127,315.27 ("New Balance") based on the consideration listed above, and other good and valuable consideration, Servicer agrees to forgive $14,140.14. You will never be required to pay this amount. There could be income tax consequences related to this forgiveness and you are advised to seek guidance from an independent tax professional. Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement

    (b)  New Monthly Payments, Payment Adjustments:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------------------------|------------------------------------------|-----------------------|-------------------|----------------------------|
| 1-5 | 3.243% | 01/01/2017 | $476.71 | $245.72 | $722.43 | 02/01/2017 | 60 |



| B-40 | 4.200% | 01/01/2022 | $543.30 | Adjust Annually | Adjust Annually | 02/01/2022 | 414 |
|------|--------|------------|---------|-----------------|-----------------|------------|-----|

Effective on 01/01/2022, Borrower's rate of interest will be 4.20% and will remain fixed for the remaining life of the loan.

**(c)  New Maturity Date:**
The maturity date will be 07/01/2056, on which date any unpaid interest and all other sums due shall be paid in full.

**2.  ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**3.  MORTAGE INSURANCE:**
Borrower agrees that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of this Agreement.

**4.  AGREEMENT NOT TO ENCUMBER:**
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement

**5.  ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:**
The existing Mortgage and Note shall be amended to include the following:  In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents to the appointment of a court appointed Receiver in the event the loan is in default.

**6.  NO OTHER CHANGES:**
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect  The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein.  Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.



**7.   NO RELIANCE; CONSTRUCTION:**

Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**8.   NO ORAL MODIFICATION:**

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**9.   SUCCESSORS AND ASSIGNS:**

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**10.   ATTORNEY'S FEES:**

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

Borrower and Lender agree that if there is a pending foreclosure action that results in a voluntary dismissal as a result of a modification or a similar settlement between Borrower and Lender then Borrower and Lender will each pay for their respective attorney fees and costs and neither party will be responsible for the other parties attorneys fees and costs.

**11. PARTIAL INVALIDITY:**

If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

Borrower:

By: _____   Date: _____
DWENDOLYN M CREECY

Servicer:

By: _____   Date: _____
Vice President, Bayview Loan Servicing, LLC

JAN 17 2017

Rafael Alvarez
Assistant Vice President

Asset Manager: Juan De La Fuente
Phone Number: ▮▮▮▮▮▮   Monday - Friday 9:00 am to 6:00 pm ET
Fax Number: ▮▮▮▮▮▮
E-mail: ▮▮▮▮▮▮▮▮▮▮

NOTARY ACKNOWLEDGEMENT

STATE OF _PA_ )
  )
COUNTY OF _Chester_ ) SS
  )

On _1-16-17_ , before me, _Kyle A Smith_ a notary
public for and within the said county, personally appeared, _Wendolyn Cheek_
_____, as the Borrower(s), personally
known to me *(or proved to me on the basis of satisfactory evidence)* to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) on the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

By: _____

Notary Public: _____

My Commission Expires: _4-27-2020_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kyle A. Smith, Notary Public
West Chester Boro, Chester County
My Commission Expires April 27, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES


**BAYVIEW**
LOAN SERVICING

Loan No

SERVICER SIGNATURE:

STATE OF FLORIDA            §
                           §
COUNTY OF MIAMI DADE       §

On  1/17/2017  , before me,  J. MARIN  , a notary public for and within the said county, personally appeared,  RAFAEL ALVAREZ  of Bayview Loan Servicing, LLC, as Servicer, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146, personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name is subscribed to the within instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person acted, executed the instrument.

WITNESS my hand and official seal.

**J. MARIN**
MY COMMISSION ▮▮▮
EXPIRES March 19, 2019
(407)398-0153    FloridaNotaryService.com

By: _J. Marin_
Notary Public: J. Marin
Notary Public for the State of Florida
My commission expires: 03/19/2019

Bayview Loan Servicing, LLC.
4425 Ponce de Leon Blvd, Coral Gables, 33146

Loan No

## LOAN MODIFICATION AGREEMENT
### with Trial Payment Plan Provision
(40 Year Term)

This Loan Modification Agreement ("Agreement") is made and entered into as of **12/21/2018**, by and between Dwendolyn M. Creecy ("Consumer") and Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust As Owner trustee of the Residential Credit Opportunities Trust V ("Lender"), with reference to the following facts and circumstances:

RECITALS

A.  Lender or its predecessor in interest made a loan (the "Loan") to Consumer in the original principal amount of (**$112,818.00**) evidenced by that certain "Promissory Note" and other related loan agreements and documents (collectively, the "Loan Documents) dated **11/23/2009** and modified **03/20/2018**. The Note ("Note") is secured by real and personal property collateral including, without limitation, a Security Instrument (the "Security Instrument") encumbering certain real property located at: 181 MADISON DRIVE, NEWARK, DE 19711 (the "Property") and improvements thereto (if any).

The current Unpaid Principal Balance (UPB) of the Note is **$128,191.50** with interest thereon at a rate of **5.50%** [Fixed] per annum from **05/01/2018**. The maturity date of the Note is **04/01/2048**. The Current unpaid/accrued interest on the Note total **$4,700.36** ("Accrued/Unpaid Interest"); Unpaid Charges total **$4,385.62**. The total amount in arrears is **$9,085.98** good through **12/01/2018**. Consumer is in default of the Note and Loan Documents for failure to pay the **05/01/2018** through **12/01/2018** installments plus all accrued late charges, etc.

B.  Consumer has requested that Lender agree to modify the Note as the same may be modified hereby. Lender is willing to do so on the terms set forth herein. The Loan Documents, as modified, amended or supplemented by this Agreement, shall remain in full force and effect.

WHEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL CONDITIONS AND AGREEMENTS CONTAINED HEREIN, CONSUMER AND LENDER AGREE AS FOLLOWS:

1.  <u>Trial Payment Period</u>: Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to place the foreclosure on hold. Consumer understands, as a condition of entering into this Loan Modification, that there will be a Twelve (12) consecutive month trial period, beginning **01/01/2019** and ending **12/01/2019**. During this Trial Payment Plan the Consumer understands that the loan will remain in foreclosure. If Consumer fails to make a monthly payment or exceeds a delinquency of Thirty (30) days or more, Consumer agrees to stipulate to Foreclosure and waives their right to all defenses upon default of this New Loan Modification Agreement. Lender agrees to waive deficiency against Consumer in the event of a new foreclosure or re-default. All Deferred amounts will be due and payments in the event of a default during the Trial Period. During the same Trial Period and upon receipt of the Twelve (12) successful and timely payments of **$890.81** per month, Lender agrees to dismiss the foreclosure.

2.  <u>Loan Modification</u>. Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to modify the Loan.  As of **12/01/2018**, the amount payable under the Note and Security Instrument ("the Unpaid Principal Balance") shall be increased to **$132,959.86** consisting of the amount(s) loaned to Consumer by Lender, which includes the arrears capitalized of **$4,768.36**. The remaining arrears of **$4,317.62** shall be deferred and placed at the end of the loan, which means that this amount will not accrue any further interest and will become due and payable as a "Balloon Payment", upon Loan Maturity. The arrears is limited to unpaid interest, escrows and any legal fees and related foreclosure costs that may have been accrued for work completed itemized in Section B above. The Consumer will be required to pay the unpaid principal balance in the event of a refinance, pay off of the loan, any transfer of interest in the home, default of any terms as set forth in this Agreement, or at loan maturity. The Maturity of the Loan will be reset to **12/01/2058**.

3.  Consumer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the changed yearly rate of **6.50%** [Fixed]. The New Monthly installment payments shall be **$890.81**. This amount consists of Principal and Interest (P&I) amount of **$778.42** and Monthly Escrow Impounds for Property Taxes of **$112.39** (T). The escrow portion of the loan payment quoted on the Agreement may fluctuate due to changes in tax assessments and/or increase in

Consumer(s) Initials _____

12/31/18

insurance premiums due. Consumer understands there is an Escrow Shortage for the Impound account due in the amount of **$1,876.72**.

- Consumer promises to submit initial payment of **$361.06** which shall be applied towards the Escrow Deposit/Shortage. Consumer and Lender agree to move the **$795.10** in Suspense to be combined with funds already in Escrow in the amount of **$720.56** in order to complete the Escrow Deposit / Shortage of **$1,876.72.**

Consumer shall be fully responsible for paying any "delinquent" Property Taxes and "delinquent" Homeowners Insurance or Homeowners Association fees that became due prior to the effective date of this modification agreement and shall show proof to Lender upon request.

4. Effective **01/01/2019**, Consumer promises to pay **$890.81**, consisting of PI&T Payment, and shall continue making monthly payments of PI&T due on the 1st day of each succeeding month thereafter, until principal and interest are paid in full. If on **12/01/2058** (the "Maturity Date"), Consumer still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Consumer will pay these amounts in full at that time.

5. Total of Payments Disclosure: I, Dwendolyn M. Creecy ("Consumer") acknowledge that I am indebted to ("Lender") in the amount of **$373,641.60** should I make all payments as scheduled in the Loan Modification Agreement. This amount includes the Principal and Interest that would be paid through the life of this Agreement. However; should Consumer choose to refinance or sell the Property prior to the Maturity Date, a payoff quote will be calculated consistent with the remaining Unpaid Principal Balance as detailed in Section 2.

   I, Dwendolyn M. Creecy ("Consumer") fully intend to pay this loan, through the proposed Loan Modification with the terms that you have provided.

6. Time is of the Essence. Documents must be returned by **01/07/2019** whether by messenger or electronically. Please be aware if the signed agreement is not returned/received with the agreed upon funds in the time allotted, this offer is null and void.

7. Interest Rate. Lender agrees that the interest rate at which interest accrues on the unpaid principal balance of the Note shall be modified to **6.50%** and will continue through the Maturity Date of **12/01/2058.**

8. Payments: Consumer shall send all payments to: FCI LENDER SERVICES, INC., 8180 E. KAISER BLVD., ANAHEIM HILLS, CA 92808; ▮▮▮▮▮▮▮▮▮▮, Monday through Friday 8:00 am to 5:00 pm.

9. Assignment of Leases and Rents Receivership: The existing Mortgage and Note shall be amended to include the following: In the event that loan is in default and Consumers are generating any gross income from the property by virtue of a tenancy or any other arrangement. Consumers agree to Irrevocably assign and transfer to Lender the right title and interest of Consumer in all existing and future leases and agreements whether or not in writing and any rents and deposits derived and collected therefrom, affecting and pertaining to the use, enjoyment or occupancy of any part of the premises. Consumer consents to the entry by Lender, Lender's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Consumer further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

10. Additional Agreements:

    Consumer agrees to the following:

    a. In the event Consumer defaults under this Agreement, without waiving any rights and remedies otherwise available to Lender, Lender shall thereupon be entitled to require and Consumer irrevocably consents to enter either Lender' Deed-In-Lieu or Short Sale program with respect to the Property. Under the Deed-In- Lieu program you will voluntarily transfer ownership of the Property to Lender or Lender's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

Consumer(s) Initials _____ *[handwritten initials]*

*[handwritten date]* 12/31/18

b. Consumer will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Lender's procedures in connection with such program(s).

11. <u>Conditions</u>:  Lender's agreement to forbear and modify loan shall be subject to Consumer's full and timely satisfaction of all the terms listed in this Agreement and the following conditions:

   a. Insurance and Property Taxes. At all times during the term of this agreement Consumer must 1) Maintain adequate homeowner's insurance; and 2) keep all property taxes and utilities paid current.

   b. Application of Payments upon Cancellation.  If this Agreement is cancelled due to Consumer's non-compliance, the Loan will revert retroactively back to the original terms.

   c. Termination. Lender's agreement to defer, forbear and modify loan shall automatically terminate, without further notice, act or instrument, upon the occurrence of any of the following events:

   - If a petition for relief under any federal or state bankruptcy, reorganization or insolvency statute or law is filed by or against Consumer or any guarantor of the Loan or any general partner of Consumer or of any guarantor of the Loan after the Effective Date of this agreement; or

   - Consumer fails to timely perform and observe any of the covenants, agreements and obligations contained in the Loan Documents, except for the obligation of the Consumer to make payments of Principal and interest; or

   - Consumer fails to timely perform any of the other covenants, agreements and obligations set forth in this Agreement; or

   - Consumer fails to pay off the Note (in full) on or before 5:00 p.m. (Pacific Time) on the Maturity Date set forth in this Agreement; or

   - If all or any part of the Property or any interest in, is sold or transferred (or if Consumer is not a natural person and a beneficial interest in; Consumer has sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Consumer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Consumer must pay all sums secured by the Security Instrument. If Consumer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Consumer.

12. <u>Termination of Loan Modification</u>.  In the event Consumers default as hereinabove defined, then all loan modifications agreed to in writing by Lender shall be null and void, and thereafter all terms of the Mortgage shall revert back to their original terms and condition, as if this Agreement had no force or effect and ("Lender") at its option continue with foreclosure. The undersigned parties hereby agree to waive any defenses as to the enforcement of any default in the terms of this Agreement and judgement for foreclosure upon any default in the terms of the Agreement. Any waiver of arrears and Unpaid Principal Balance reductions shall be null and void and shall be added back to the balance of the loan.

13. <u>Change in Financial Status.</u>  In the event Consumer or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consenter to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator, or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relation to bankruptcy, insolvency, or other relief for debtors, then subject to court approval, Lender shall thereupon be entitled and Consumer irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Landers's requests for such relief. This provision is a material inducement for Lender to enter into this Agreement.

14. <u>Meaning of Terms</u>. All terms and/or phrases used in this Agreement shall have the respective meanings ascribed to them in the Loan Documents except as otherwise defined herein to the contrary.

15. <u>Conditions</u>. Lender's obligations hereunder and Consumer's ability to enforce this Agreement are subject to and conditioned upon the following: (i) the Deed of Trust has suffered no loss of priority as against other liens or

Consumer(s) Initials _____

12/31/18

encumbrances recorded against the Property; and (ii) Consumer and any guarantor(s) of the Loan shall have executed and delivered a copy of this Agreement to Lender.

16. <u>Release of Lender.</u>  In consideration of Lender's modification of the Loan Documents under this Agreement, Consumer hereby waives and releases Lender from any and all actions, causes of action, claims, damages, demands, liability and loss arising from or relating to the Loan, including, but not limited to, Consumer's original loan applications and the making, funding and administration of such loan.

17. <u>Advice from Financial Advisor.</u> The parties understand that this is a legally binding agreement that may affect such party's rights. Each party represents to the other that it had the opportunity to receive financial and/or legal advice from the advisor and/or counsel of its choice regarding the meaning and legal significance of this Agreement and that it is satisfied with any advice received from such advisor and/or legal counsel.

18. <u>No Coercion.</u>  Consumer acknowledges and represents to Lender that in entering into this Agreement, Consumer has not been subjected to any coercion or any other undue influence, and has exercised Consumer's own free will.

19. <u>Miscellaneous.</u>

    a.   <u>Entire Agreement.</u>  This Agreement represents the entire integrated agreement between the parties relating to the subject matter of this Agreement.  The parties agree that there are no other agreements or understandings, written or oral, express or implied, tacit or otherwise in respect of the subject matter of this Agreement.  This Agreement may be amended only in writing.

    b.   <u>Attorneys' Fees.</u>  If any action is threatened or commenced to interpret or enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs of suit from the other.

    c.   <u>Fair Meaning.</u>  This Agreement shall be interpreted according to its fair meaning and not for or against any party hereto or the drafter of the agreement.  This Agreement has been negotiated between independent counsels separately representing each party to this Agreement.

    d.   <u>Cooperation.</u> The parties hereto agree to cooperate with each other to the extent necessary to affect the purposes of this Agreement, including without limitation executing additional documents, providing introductions to other persons and providing copies of books and records.

    e.   <u>Counterparts.</u>  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Agreement may be executed by facsimile signatures which shall be deemed original signatures for all purposes.

    f.   <u>Successors and Assigns.</u>  This Agreement shall bind the successors, assigns, heirs, administrators and executrixes of each party hereto.

    g.   <u>Sole Parties.</u>  This Agreement is made exclusively for the benefit of and solely for the protection of the parties hereto, and no other person or persons shall have the right to enforce the provisions hereof by action or legal proceedings or otherwise.

This agreement has been solely negotiated between the consumer and lender.  FCI Lender Services will not be liable for any disputes arising out of this expedited agreement.  Each party will hold harmless and indemnify FCI Lender Services for the facilitation of this document.

No changes to the FCI Lender Services system will be made without the signed agreement from the consumer and the majority approval of the lender.

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the day and year first above written.

LENDER: If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement.

Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust As Owner Trustee of the Residential Credit Opportunities Trust V
By: American Mortgage Investment Partners Management, LLC, as Attorney in Fact

By: _____        1-7-19
      Name: Ron McMahan                                        Date
      Title:  CEO

Consumer(s) Initials _____ 12/31/18

CONSUMER: If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement in the presence of a Notary.

MORTGAGOR'S SIGNATURE AND NOTARY SECTION

Name: Dwendolyn M. Creecy                          Date

Signed, sealed and delivered in the presence of _Jason M. Raab_ on this: _31_ day of _December_ , 2018.

Notary Public for Dwendolyn M. Creecy only

Notary Public for the County of _New Castle_ State of _DE_ My Commission Expires: _8-1-21_ (Seal)

Jason M. Raab
Notary Public
Commission Expires 8/01/2021

Consumer(s) Initials _____  12/31/18

Loan No

**LOAN MODIFICATION AGREEMENT**
with Trial Payment Plan Provision
(40 Year Term)

This Loan Modification Agreement ("Agreement") is made and entered into as of **03/27/2019**, by and between Dwendolyn M. Creecy ("Consumer") and Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust As Owner trustee of the Residential Credit Opportunities Trust V ("Lender"), with reference to the following facts and circumstances:

RECITALS

A. Lender or its predecessor in interest made a loan (the "Loan") to Consumer in the original principal amount of (**$112,818.00**) evidenced by that certain "Promissory Note" and other related loan agreements and documents (collectively, the "Loan Documents") dated **11/23/2009** and modified **05/01/2018**. The Note ("Note") is secured by real and personal property collateral including, without limitation, a Security Instrument (the "Security Instrument") encumbering certain real property located at: 181 MADISON DRIVE, NEWARK, DE 19711 (the "Property") and improvements thereto (if any).

The current Unpaid Principal Balance (UPB) of the Note is **$128,191.50** with interest thereon at a rate of **5.50%** [Fixed] per annum from **05/01/2018**. The maturity date of the Note is **04/01/2048**. The Current unpaid/accrued interest on the Note total **$6,451.72** ("Accrued/Unpaid Interest"); Accrued Late Charges are **$58.22**; Unpaid Charges total **$6,479.31**; Lender Advancement for Escrow Shortage is **$1,123.86**; The funds held in Suspense in the amount of **$2,764.66** shall be applied towards existing arrears leaving the balance at **$11,348.45** good through **03/01/2019**. Consumer is in default of the Note and Loan Documents for failure to pay the **05/01/2018** through **03/01/2019** installments plus all accrued late charges, etc.

B. Consumer has requested that Lender agree to modify the Note as the same may be modified hereby. Lender is willing to do so on the terms set forth herein. The Loan Documents, as modified, amended or supplemented by this Agreement, shall remain in full force and effect.

WHEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL CONDITIONS AND AGREEMENTS CONTAINED HEREIN, CONSUMER AND LENDER AGREE AS FOLLOWS:

1. <u>Trial Payment Period</u>: Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to place the foreclosure on hold. Consumer understands, as a condition of entering into this Loan Modification, that there will be a Twelve (12) consecutive month trial period, beginning **04/01/2019** and ending **03/01/2020**. During this Trial Payment Plan the Consumer understands that the loan will remain in foreclosure. If Consumer fails to make a monthly payment or exceeds a delinquency of Thirty (30) days or more, Consumer agrees to stipulate to Foreclosure and waives their right to all defenses upon default of this New Loan Modification Agreement. Lender agrees to waive deficiency against Consumer in the event of a new foreclosure or re-default. All Deferred amounts will be due and payments in the event of a default during the Trial Period. During the same Trial Period and upon receipt of the Twelve (12) successful and timely payments of **$929.34** per month, Lender agrees to dismiss the foreclosure.

2. <u>Loan Modification</u>. Upon receipt of this fully executed agreement and the funds outlined below, the lender agrees to modify the Loan. As of **03/01/2019**, the amount payable under the Note and Security Instrument ("the Unpaid Principal Balance") shall be increased to **$139,539.95** consisting of the amount(s) loaned to Consumer by Lender, which includes the arrears capitalized of **$11,348.45**. The arrears are limited to unpaid interest, escrows and any legal fees and related foreclosure costs that may have been accrued for work completed itemized in Section B above. The Consumer will be required to pay the unpaid principal balance in the event of a refinance, pay off of the loan, any transfer of interest in the home, default of any terms as set forth in this Agreement, or at loan maturity. The Maturity of the Loan will be reset to **03/01/2059**.

3. Consumer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the changed yearly rate of **6.50%** [Fixed]. The New Monthly installment payments shall be **$929.34**. This amount consists of Principal and Interest (P&I) amount of **$816.95** and Monthly Escrow Impounds for Property Taxes of **$112.39** (T) only. The escrow portion of the loan payment quoted on the Agreement may fluctuate due to changes in tax assessments and/or increase in

Consumer(s) Initials _____

insurance premiums due.  Consumer understands there is an Escrow Shortage for the Impound due in the amount of **$1,123.86**.

Lender agrees to advance the initial payment of **$1,123.86** which shall be applied towards the Escrow Deposit/Shortage.

Consumer shall be fully responsible for paying any "delinquent" Property Taxes and "delinquent and future" Homeowners Insurance or Homeowners Association fees that became due prior to the effective date of this modification agreement and shall show proof to Lender upon request.

4.  Effective **04/01/2019**, Consumer promises to pay **$929.34**, consisting of PIT Payment, and shall continue making monthly payments of PIT due on the 1st day of each succeeding month thereafter, until principal and interest are paid in full.  If on **03/01/2059** (the "Maturity Date"), Consumer still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Consumer will pay these amounts in full at that time.

5.  <u>Total of Payments Disclosure</u>:  I, Dwendolyn M. Creecy ("Consumer") acknowledge that I am indebted to ("Lender") in the amount of **$392,127.31** should I make all payments as scheduled in the Loan Modification Agreement. This amount includes the Principal and Interest that would be paid through the life of this Agreement. However; should Consumer choose to refinance or sell the Property prior to the Maturity Date, a payoff quote will be calculated consistent with the remaining Unpaid Principal Balance as detailed in Section 2.

    I, Dwendolyn M. Creecy ("Consumer") fully intend to pay this loan, through the proposed Loan Modification with the terms that you have provided.

6.  <u>Time is of the Essence.</u> Documents must be returned within 10 days upon receipt whether by messenger or electronically. Please be aware if the signed agreement is not returned/received with the agreed upon funds in the time allotted, this offer is null and void.

7.  <u>Interest Rate.</u>  Lender agrees that the interest rate at which interest accrues on the unpaid principal balance of the Note shall be modified to **6.50%** and will continue through the Maturity Date of **03/01/2059.**

8.  <u>Payments</u>:  Consumer shall send all payments to: FCI LENDER SERVICES, INC., 8180 E. KAISER BLVD., ANAHEIM HILLS, CA 92808; ███████████ Monday through Friday 8:00 am to 5:00 pm.

9.  <u>Assignment of Leases and Rents Receivership</u>: The existing Mortgage and Note shall be amended to include the following: In the event that loan is in default and Consumers are generating any gross income from the property by virtue of a tenancy or any other arrangement. Consumers agree to Irrevocably assign and transfer to Lender the right title and interest of Consumer in all existing and future leases and agreements whether or not in writing and any rents and deposits derived and collected therefrom, affecting and pertaining to the use, enjoyment or occupancy of any part of the premises. Consumer consents to the entry by Lender, Lender's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Consumer further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

10. <u>Additional Agreements:</u>

    Consumer agrees to the following:

    a.  In the event Consumer defaults under this Agreement, without waiving any rights and remedies otherwise available to Lender, Lender shall thereupon be entitled to require and Consumer irrevocably consents to enter either Lender' Deed-In-Lieu or Short Sale program with respect to the Property. Under the Deed-In- Lieu program you will voluntarily transfer ownership of the Property to Lender or Lender's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

    b.  Consumer will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Lender's procedures in connection with such program(s).

Consumer(s) Initials _____

11. <u>Conditions</u>:  Lender's agreement to forbear and modify loan shall be subject to Consumer's full and timely satisfaction of all the terms listed in this Agreement and the following conditions:

    a.  Insurance and Property Taxes. At all times during the term of this agreement Consumer must 1) Maintain adequate homeowner's insurance; and 2) keep all property taxes and utilities paid current.

    b.  Application of Payments upon Cancellation.  If this Agreement is cancelled due to Consumer's non-compliance, the Loan will revert retroactively back to the original terms.

    c.  Termination. Lender's agreement to defer, forbear and modify loan shall automatically terminate, without further notice, act or instrument, upon the occurrence of any of the following events:

      - If a petition for relief under any federal or state bankruptcy, reorganization or insolvency statute or law is filed by or against Consumer or any guarantor of the Loan or any general partner of Consumer or of any guarantor of the Loan after the Effective Date of this agreement; or

      - Consumer fails to timely perform and observe any of the covenants, agreements and obligations contained in the Loan Documents, except for the obligation of the Consumer to make payments of Principal and interest; or

      - Consumer fails to timely perform any of the other covenants, agreements and obligations set forth in this Agreement; or

      - Consumer fails to pay off the Note (in full) on or before 5:00 p.m. (Pacific Time) on the Maturity Date set forth in this Agreement; or

      - If all or any part of the Property or any interest in, is sold or transferred (or if Consumer is not a natural person and a beneficial interest in; Consumer has sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Consumer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Consumer must pay all sums secured by the Security Instrument. If Consumer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Consumer.

12. <u>Termination of Loan Modification</u>.  In the event Consumers default as hereinabove defined, then all loan modifications agreed to in writing by Lender shall be null and void, and thereafter all terms of the Mortgage shall revert back to their original terms and condition, as if this Agreement had no force or effect and ("Lender") at its option continue with foreclosure. The undersigned parties hereby agree to waive any defenses as to the enforcement of any default in the terms of this Agreement and judgement for foreclosure upon any default in the terms of the Agreement. Any waiver of arrears and Unpaid Principal Balance reductions shall be null and void and shall be added back to the balance of the loan.

13. <u>Change in Financial Status.</u>  In the event Consumer or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consenter to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator, or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relation to bankruptcy, insolvency, or other relief for debtors, then subject to court approval, Lender shall thereupon be entitled and Consumer irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Landers's requests for such relief. This provision is a material inducement for Lender to enter into this Agreement.

14. <u>Meaning of Terms</u>. All terms and/or phrases used in this Agreement shall have the respective meanings ascribed to them in the Loan Documents except as otherwise defined herein to the contrary.

15. <u>Conditions</u>. Lender's obligations hereunder and Consumer's ability to enforce this Agreement are subject to and conditioned upon the following: (i) the Deed of Trust has suffered no loss of priority as against other liens or encumbrances recorded against the Property; and (ii) Consumer and any guarantor(s) of the Loan shall have executed and delivered a copy of this Agreement to Lender.

Consumer(s) Initials _____

16. <u>Release of Lender.</u>  In consideration of Lender's modification of the Loan Documents under this Agreement, Consumer hereby waives and releases Lender from any and all actions, causes of action, claims, damages, demands, liability and loss arising from or relating to the Loan, including, but not limited to, Consumer's original loan applications and the making, funding and administration of such loan.

17. <u>Advice from Financial Advisor</u>. The parties understand that this is a legally binding agreement that may affect such party's rights. Each party represents to the other that it had the opportunity to receive financial and/or legal advice from the advisor and/or counsel of its choice regarding the meaning and legal significance of this Agreement and that it is satisfied with any advice received from such advisor and/or legal counsel.

18. <u>No Coercion.</u>  Consumer acknowledges and represents to Lender that in entering into this Agreement, Consumer has not been subjected to any coercion or any other undue influence and has exercised Consumer's own free will.

19. <u>Miscellaneous.</u>

    a.  <u>Entire Agreement</u>.  This Agreement represents the entire integrated agreement between the parties relating to the subject matter of this Agreement.  The parties agree that there are no other agreements or understandings, written or oral, express or implied, tacit or otherwise in respect of the subject matter of this Agreement.  This Agreement may be amended only in writing.

    b.  <u>Attorneys' Fees</u>.  If any action is threatened or commenced to interpret or enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs of suit from the other.

    c.  <u>Fair Meaning</u>.  This Agreement shall be interpreted according to its fair meaning and not for or against any party hereto or the drafter of the agreement.  This Agreement has been negotiated between independent counsels separately representing each party to this Agreement.

    d.  <u>Cooperation</u>.  The parties hereto agree to cooperate with each other to the extent necessary to affect the purposes of this Agreement, including without limitation executing additional documents, providing introductions to other persons and providing copies of books and records.

    e.  <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Agreement may be executed by facsimile signatures which shall be deemed original signatures for all purposes.

    f.  <u>Successors and Assigns</u>.  This Agreement shall bind the successors, assigns, heirs, administrators and executrixes of each party hereto.

    g.  <u>Sole Parties</u>.  This Agreement is made exclusively for the benefit of and solely for the protection of the parties hereto, and no other person or persons shall have the right to enforce the provisions hereof by action or legal proceedings or otherwise.

This agreement has been solely negotiated between the consumer and lender.  FCI Lender Services will not be liable for any disputes arising out of this expedited agreement.  Each party will hold harmless and indemnify FCI Lender Services for the facilitation of this document.

No changes to the FCI Lender Services system will be made without the signed agreement from the consumer and the majority approval of the lender.

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the day and year first above written.

LENDER: If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement.

Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust As Owner Trustee of the Residential Credit Opportunities Trust V
By: American Mortgage Investment Partners Management, LLC, as Attorney in Fact

By: _____        4-4-19
    Name: Ron McMahan                                Date
    Title:   CEO

Consumer(s) Initials _____

CONSUMER: If you are in agreement with the Modified Terms, please sign in the space provided below of this Loan Modification Agreement in the presence of a Notary.

MORTGAGOR'S SIGNATURE AND NOTARY SECTION

Name: Dwendolyn M. Creecy                     Date 3/29/19

Signed, sealed and delivered in the presence of _Jason M Raab_ on this: _29_ day of _March_, 2019.

Jason M. Raab
Notary Public
Commission Expires 8/01/2021

Notary Public

Notary Public for the County of _New Castle_ State of _DE_ My Commission Expires: _8-1-21_ (Seal)

Consumer(s) Initials _____